UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID A. L., <br><br>        Plaintiff, <br>v. <br><br>KILOLO KIJAKAJI, Acting Commissioner of Social Security, <br><br>        Defendant. | Case No. 2:22-cv-02195-GJS <br><br>**MEMORANDUM OPINION AND ORDER** |

## I.    PROCEDURAL HISTORY

Plaintiff David A. L.[1] ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying his application for a period of disability and Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before a United States Magistrate Judge (ECF Nos. 11, 12) and briefs (ECF Nos. 17 ("Pl.'s Br.") and 18 ("Def't's Br.")) addressing the disputed issue in the case. The matter is now ready for decision. For the reasons set forth below, the

---

[1] In the interest of privacy, this Order uses only the first name and middle and last initials of the last name of the non-governmental party in this case.

Court finds that this matter should be remanded.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed an application for DIB on December 23, 2019, alleging disability commencing on November 12, 2017. (ECF No. 15, Administrative Record ("AR") 10; *see also* AR 161-62.) Plaintiff's application was denied at the initial level of review and on reconsideration. (AR 21, 78, 90.) A hearing was held before Administrative Law Judge Richard T. Breen ("the ALJ") on December 22, 2020. (AR 10, 31-62.)

On February 1, 2021, the ALJ issued an unfavorable decision applying the five-step sequential evaluation process for assessing disability. (AR 10-26); *see* 20 C.F.R. § 404.1520(b)-(g)(1). At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (AR 12.) At step two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease; bilateral knee derangement; and bilateral carpal tunnel syndrome ("CTS"). (AR 12.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix 1 of the Regulations. (AR 16); *see* 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), as follows:

> [H]e can sustain occasional posturals, but is precluded from the use of ladders; he can occasionally sustain bilateral overhead reaching; he can frequently handle and finger, bilaterally; and he must avoid concentrated exposure to extreme cold, vibration, dangerous machinery, and unprotected heights.

(AR 17.) At step four, the ALJ determined that Plaintiff is not able to perform his past relevant work in the composite job of warehouse clerk and scheduler, and in the

composite job of warehouse clerk and bench technician. (AR 24.) At step five, based on the testimony of the vocational expert ("VE"), the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, including representative jobs such as as a lens gauger, a table worker, and an addresser. (AR 25, 56-60.) Based on these findings, the ALJ found Plaintiff not disabled through the date of the decision. (AR 26.)

The Appeals Council denied review of the ALJ's decision on February 2, 2022. (AR 1-5.) This action followed.

### III.   GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence . . . is 'more than a mere scintilla' . . . [i]t means – and only means – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citation omitted).

The Court will uphold the Commissioner's decision when "the evidence is susceptible to more than one rational interpretation." *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is

"inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

Plaintiff raises the following issue challenging the ALJ's findings and determination of non-disability: the ALJ's RFC assessment of the medical opinions of Worker's Compensation physician Behnam Sam Tabibian, M.D., lacks the support of substantial evidence. (Pl.'s Br. 5.) As discussed below, the Court agrees with Plaintiff and finds that remand is appropriate.

### A. Legal Standard

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide the ALJ will no longer "give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings. *See* 20 C.F.R. § 404.1520c(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including the length of the treatment, frequency of examinations, purpose of the treatment relationship, extent of the treatment

4

relationship, and the examining relationship[2]), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Agency's] disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore, the ALJ is required to explain how both factors were considered.[3] *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain how factors such as the "[r]elationship with the claimant," "[s]pecialization," and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," were considered. 20 C.F.R. § 404.1520c(b)(2). However, when the ALJ finds that two or more medical opinions are equally well-supported and consistent with the

---

[2] The regulations state that "[a] medical source may have a better understanding of [the claimant's] impairments if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder." 20 C.F.R. § 404.1520c(c)(3)(v).

[3] Supportability and consistency are explained in the regulations as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

record but are not "exactly the same," he must articulate how he "considered the other most persuasive factors." 20 C.F.R. § 404.1520c(b)(3). Further, while these new regulations eliminate the hierarchy between treating, examining, and non-examining medical sources, the ALJ must still provide an explanation supported by substantial evidence for finding a medical opinion unpersuasive. *See, e.g.*, *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (noting that even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence).

**B.     The Parties' Contentions**

Plaintiff notes that the ALJ found that the opinion of Plaintiff's Worker's Compensation physician, Dr. Tabibian, was "a restriction to 'essentially . . . sedentary exertion'" and was both consistent with the sedentary assessment of the State agency physician on initial review and supported by clinical and objective findings. (Pl.'s Br. 5 (citing AR 21, 22).) Plaintiff complains that the ALJ did not include all the limitations assessed by Dr. Tabibian, including his limitations assessed prior to October 1, 2019, of "no lifting/carrying; no pushing/pulling; ability to sit and stand as needed to mitigate pain, avoid postural; no squatting, and no standing or walking longer than fifteen minutes per hour." (Pl.'s Br. 5 (citation omitted).) He argues that because the ALJ found the opinion of Dr. Tabibian and the State agency physician on initial review to be "equally supported, the ALJ was required to state how he considered the treating relationship between [Plaintiff] and Dr. Tabibian" using the factors set forth in 20 C.F.R. § 404.1520c(b) as described above. (Pl.'s Br. 5, 6-7 (citing 20 C.F.R. § 404.1520c(b)).)

Plaintiff specifically observes that in Dr. Tabibian's opinions of September 25, 2018, October 30, 2018, December 3, 2018, January 3, 2019, February 7, 2019,

March 21, 2019, May 2, 2019, and June 13, 2019, he noted, among other things, objective findings of decreased lordosis and anterior head carriage; muscle spasm; muscle guarding and tenderness to palpation of the cervical spine; restricted cervical range of motion; lumbar spasm and tenderness to palpation in the lumbar paraspinal muscles and the sacroiliac joints and notches; restricted lumbar range of motion; bilateral positive straight leg raising; restricted range of motion of the bilateral knees; patellofemoral compression; and crepitus. (Pl.'s Br. 7 (citations omitted).) Between September 25, 2018, and August 29, 2019, Dr. Tabibian's assessed limitations included "no lifting/carrying; no pushing/pulling; ability to sit and stand as needed to mitigate pain, avoid postural [bending, stooping, twisting, turning, and crouching]; no squatting, and no standing or walking longer than fifteen minutes per hour." (Pl.'s Br. 5.) Dr. Tabibian also noted Plaintiff walked with an abnormal gait with a limp and use of a cane. (Pl.'s Br. 7 (citing AR 518-22, 889-990, 916).)

      Plaintiff observes that on October 1, 2019, Dr. Tabibian completed a permanent and stationary report that "included the same limitations as his previous assessments, except Dr. Tabibian changed his previous lifting/carrying limitation from no lifting to no heavy lifting." (Pl.'s Br. 7 (citing AR 1004-19).) Plaintiff argues that because "the ALJ found Dr. Tabibian's final assessment consistent with the ability to lift only 10 pounds the ALJ apparently resolved the lifting restriction in [Plaintiff's] favor." (Pl.'s Br. 7-8.) He concludes, therefore, that Dr. Tabibian's limitation of "no lifting/carrying and preclusion of walking for more than fifteen minutes" was in effect from the date of injury, November 12, 2017, until the final assessment on October 1, 2019, and that on October 1, 2019, Dr. Tabibian's "standing limitation and the sit/stand as needed limitations still applied." (Pl.'s Br. 8 (citing AR 1004, 1018).) Plaintiff argues that the ALJ failed to include the "sit and stand as needed" limitation in the RFC determination, which was not harmless error because the "need to get up and stretch every once in the while [as considered by the

7

VE with respect to one of the ALJ's hypotheticals] is not the same as an 'at will' sit/stand option." (Pl.'s Br. 8; *see also* AR 60.)

Plaintiff submits that the Court should remand the action "for the ALJ to determine whether an individual limited to sedentary work with the need to sit/stand at will at his work station, and limited to standing only 15 minutes at a time can perform the occupations identified at step 5," and that the Court "should also find that the date of injury until the date of the Permanent and Stationary Report of Dr. Tabibian exceeded the 12-month durational requirement." (Pl.'s Br. 9.)

Defendant responds that the ALJ resolved any ambiguities and conflicts in Dr. Tabibian's multiple opinions "by considering those opinions together, in a single analysis, and in light of the substantial objective medical evidence in the record." (Def't's Br. 4.) In doing so, Defendant notes that the ALJ's RFC determination was consistent with the new regulations, "which put the emphasis on supportability and consistency with the evidence." (Def't's Br. 4-5). Defendant states that the ALJ "duly took note" of Dr. Tabibian's earlier preclusions "from any lifting, carrying, pushing and pulling as well as the need to alternate between sitting and standing and the preclusion from standing and walking more than 15 minutes per hours," and explained "that it was unclear whether those were permanent or temporary restrictions, and that [Dr. Tabibian] had issued a clearer, permanent and stationary report in October 2019."[4] (Def't's Br. 6 (citing AR 22, 24).)

According to Defendant, Dr. Tabibian's October 2019 "restriction from heavy lifting under worker's compensation guidelines contemplated that [Plaintiff] had lost 'approximately half of [his] preinjury capacity for lifting.'" (Def't's Br. 6 (citing

---

[4] The ALJ never stated that the October 2019 report was "clearer" than any of Dr. Tabibian's other reports. In fact, he merely noted that this assessment "is considered a restriction to sedentary exertion, which [as with all of Dr. Tabibian's other reports] is supported by objective and clinical findings," and therefore "persuasive." (AR 24.)

8

*Macri v. Chater*, 93 F.3d 540, 543-44 (9th Cir. 1996)).) Thus, Plaintiff's prior work, which required him to lift and carry up to 50 pounds, meant that he could still lift up to 25 pounds, "whereas sedentary work required [Plaintiff] to lift up to 10 pounds." (Def't's Br. 7 (citing 20 C.F.R. § 404.1567(a)).)

      Defendant also notes that with respect to Plaintiff's need to alternate sitting and standing at will, the VE testified that it "would not impact Plaintiff's ability to perform the representative sedentary occupations he identified." (Def't's Br. 7 (citing AR 60, 1018).) Additionally, Defendant points out that Plaintiff's assessed need to avoid prolonged standing and walking for greater than 15 minutes per hour, "translate[s] into a total of 2 hours of standing and walking in an 8-hour day" -- consistent with sedentary work, which is defined as "about 2 hours" of standing and walking. (Def't's Br. 7 (citing AR 1018; Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *3).)

**C.    Analysis**

      Plaintiff's arguments in support of his positions on his stated issue are somewhat disjointed and scattered throughout his brief. As best the Court can glean, Plaintiff requests this Court to find that Plaintiff's limitations have exceeded the 12-month durational requirement when computed from the date of his injury to Dr. Tabibian's October 1, 2019, report. (Pl.'s Br. 8, 9.) He seeks a remand of this action "for the ALJ to determine whether an individual limited to sedentary work with the need to sit/stand at will at his work station, and limited to standing only 15 minutes at a time can perform the occupations identified at step 5." (Pl.'s Br. 9.) He also submits that the ALJ committed error because he should have specifically stated how he considered the factors described in 20 C.F.R. § 404.1520c(b)(3) because the ALJ found the opinions of both Dr. Tabibian and the State agency physician to be persuasive. (Pl.'s Br. 6-7.) The Court finds that remand is

9

warranted with respect to this latter proposition.

Here, the ALJ found the State agency physician opinion on reconsideration to be only "partially persuasive" because it was based on treatment records in evidence, and "there are updated medical records in evidence, which the State Agency did not review." (AR 23.) He found the State agency physician opinion on initial review to be "more persuasive":

> [T]he . . . State Agency assessment [on initial review] actually included more restrictions in [Plaintiff's] functional capacity which are consistent with the updated records . . . [and] therefore is more persuasive [than the reconsideration review]. There is insufficient explanation to account for the changes in the functional capacity assessments between [initial review and reconsideration review]; and for these reasons, [the initial review opinion] is more persuasive [than the reconsideration review opinion], since the undersigned finds it more consistent with the record as a whole.(AR 24.) The ALJ did not otherwise discuss the State agency physician's findings on initial review.[5]

(AR 24.) The ALJ also found Dr. Tabibian's reports to be persuasive because (1) Dr. Tabibian relied on objective clinical testing and imaging reports in support of his assessments, and (2) his restriction to sedentary exertion was "consistent with the more recent assessments by the State Agency." (AR 22.) With respect to Dr. Tabibian's October 30, 2018, evaluation and his specific limitations precluding Plaintiff from any lifting, carrying, pushing, or pulling, finding a need to alternate between sitting and standing, and precluding Plaintiff from being able to stand or walk for more than 15 minutes in an hour,[6] the ALJ commented only that Dr.

---

[5] The Court observes that -- inexplicably -- the State agency physician on reconsideration in June 2020 appears *not* to have reviewed Dr. Tabibian's records, despite the fact that the physician on initial review in February 2020 reviewed at least Dr. Tabibian's September 25, 2018, March 21, 2019, and August 29, 2019, reports. (*Compare* AR 83, 87 *with* AR 70, 71.)

[6] The Court notes that the ALJ did not specifically discuss Dr. Tabibian's (cont'd . . .)

Tabibian "failed to indicate whether these functional limitations were permanent or temporary." (AR 22.) The ALJ went on to state:

> Dr. Tabibian, however, has indicated he relied on objective clinical testing, as well as imaging reports, in support of the assessment, [and his] restriction essentially to sedentary exertion is consistent with the more recent assessments by the State Agency. For these reasons, Dr. Tabibian's assessment is persuasive.

(AR 22.)

The ALJ then specifically discussed Dr. Tabibian's January 3, 2019, report, noting that Plaintiff "continued to complain of pain and radiating numbness," and "continued to have tenderness and reduced range of motion on exam." (AR 22.) He also stated that Dr. Tabibian's "functional assessment was unchanged [and] [t]he persuasiveness of this updated evaluation is the same, since it remains based on objective and clinical findings, as well as consistent with the most recent assessments in evidence." (AR 22.) The ALJ then individually considered each of Dr. Tabibian's reports dated between February 7, 2019, and August 29, 2019, and for each generally stated the same thing: Plaintiff's "complaints essentially were unchanged [and] [t]he functional restrictions also were unchanged. The persuasiveness of this updated evaluation is the same, since it remains based on objective and clinical findings, as well as consistent with the most recent assessments in evidence." (AR 22-23.)

Thus, between September 25, 2018, and August 29, 2019 -- notwithstanding the ALJ's comment (without stating any conclusion based on that comment), that Dr. Tabibian failed to indicate "whether these functional limitations were permanent or temporary" -- Plaintiff consistently exhibited the same complaints and physical

---

September 25, 2018, Initial Report, or his December 3, 2018, report, in which Dr. Tabibian also noted the same restrictions. (AR 869, 876-77, 885.)

findings on assessment and, Dr. Tabibian's functional assessment, whether the functional limitations were considered permanent or temporary, was unchanged during that time period.

In his October 1, 2019, report, based on his own examination and previous clinical and diagnostic findings, Dr. Tabibian diagnosed Plaintiff with cervical spine musculoligamentous sprain/strain; lumber spine musculoligamentous sprain/strain with bilateral sacroiliac joint sprain; bilateral wrist sprain/strain with positive electrodiagnostic study findings revealing moderate bilateral carpal tunnel syndrome; and bilateral knee patellofemoral arthralgia. (AR 1013.) He continued to find that Plaintiff was restricted to sitting and standing as needed for pain; and should avoid prolonged standing and walking for greater than 15 minutes per hour. (AR 1018.) However, he changed his previous no lifting, carrying, pushing, and pulling limitations to "no *heavy* lifting, carrying, pushing, and pulling," and his limitations to avoid bending, stooping, twisting, turning, and crouching, and no squatting, changed to avoid *repetitive* bending, stooping, twisting, turning, squatting, and crouching. (AR 522, 1018 (emphasis added).)

By way of comparison, on February 20, 2020, on initial review, the State agency physician opined that Plaintiff had the capability to perform sedentary work as follows: occasionally lift and/or carry 10 pounds, and frequently lift and/or carry less than 10 pounds; upward pulling with the same limits as lift and/or carry; stand and/or walk with normal breaks for a total of two hours; sit with normal breaks for a total of about six hours in an eight-hour workday; occasionally climb ramps/stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; limited left and right overhead reaching; limited bilateral handling and fingering; and avoid concentrated exposure to vibration and hazards. (AR 74-76.)

In his RFC determination, the ALJ found Plaintiff can sustain occasional postural activities but is precluded from the use of ladders; he can occasionally

sustain bilateral overhead reaching; he can frequently handle and finger, bilaterally; and he must avoid concentrated exposure to extreme cold, vibration, dangerous machinery, and unprotected heights. While the finding that Plaintiff can sustain occasional postural activities was suggested by both the State agency reviewer and Dr. Tabibian in his October 2019 report, other RFC findings, including occasional bilateral overhead reaching and avoiding concentrated exposure to environmental hazards, were suggested only by the State agency reviewer. One of the ALJ's determined RFC limitations -- *frequent* handling and fingering bilaterally -- was not suggested by either the State agency reviewer (who limited Plaintiff to occasional handling and fingering) or Dr. Tabibian (who diagnosed moderate bilateral CTS), and the ALJ also did not include Dr. Tabibian's limitations of sitting and standing at will to mitigate pain, and no standing or walking longer than fifteen minutes per hour.

Because the ALJ found the opinions of Dr. Tabibian and the State agency physician on initial review to be persuasive because they were consistent with the evidence of record, and because the opinions of those physicians reached different conclusions, the ALJ was required to articulate how he "considered the other most persuasive factors" in arriving at his RFC determination but failed to do so. 20 C.F.R. § 404.1520c(b)(3). For instance, the ALJ should have explained his RFC limitation to *frequent* handling and fingering, despite the State agency physician limiting Plaintiff to *occasional* handling and fingering, Dr. Tabibian's diagnosis of moderate bilateral CTS, and the ALJ's determination that Plaintiff has the severe impairment of bilateral CTS. He also should have explained why he appears to have ignored Dr. Tabibian's limitations to sitting and standing at will and no standing or walking longer than fifteen minutes per hour. An ALJ errs when provides an incomplete RFC ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012) (further noting that the error is not harmless

when an ALJ fails to discuss significant and probative evidence favorable to a claimant's position because when the RFC is incomplete, the hypothetical question presented to the VE is incomplete and, therefore, the ALJ's reliance on the VE's answers is improper)).

In this case, because the VE testified that there is no light or sedentary work available for an individual who is limited to lifting and carrying five pounds[7] and occasional bilateral handling and fingering, the Court is unable to conclude that the ALJ's errors in evaluating Plaintiff's subjective complaints were "harmless" or "inconsequential to the ultimate non-disability determination." *Brown-Hunter*, 806 F.3d at 492.

## V. REMAND FOR FURTHER PROCEEDINGS

Remand is appropriate, as the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101, n.5 (9th Cir. 2014) (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient

---

[7] Sedentary work involves lifting no more than 10 pounds. 20 C.F.R. § 404.1567(a). Each of three occupations suggested by the VE requires frequent handling and fingering. *Dictionary of Occupational Titles* (4th ed. Rev. 1991), at Nos. 716-687-030, 739.687-182, 209.587-010. Thus, if plaintiff had been found limited to only occasional handling and fingering as suggested by the State agency physician, it is reasonable to assume those three occupations would have been precluded or severely eroded.

unanswered questions in the record").

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

## VI. CONCLUSION

For all the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is **REVERSED** and this matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: March 10, 2023

_____
HON. GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE